**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 10-12324 MER |
| EDWARD ALOYSIUS MEAGHER, III | ) |
| LINDA JENNERS MEAGHER, | ) Chapter 7 |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| LINDA ADAMS AND JOHN ADAMS, | ) Adversary No. 11-1014 MER |
| individually, and derivatively on | ) |
| behalf of THE WOODSTONE | ) |
| CONSULTING CO., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| EDWARD ALOYSIUS MEAGHER, III, and | ) |
| LINDA JENNERS MEAGHER, | ) Signed/Docketed |
| | ) November 23, 2012 |
| Defendants. | ) |

## ORDER

THIS MATTER comes before the Court on the Defendants' Motion for Summary Judgment and the Plaintiffs' Response.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), as it involves the dischargeability of a debt.

## BACKGROUND FACTS

Defendants Edward and Linda Meagher (the "Meaghers") filed their voluntary Chapter 7 petition on February 9, 2010. Prior to filing for relief, they operated a business called Woodstone Consulting Company ("Woodstone"). Plaintiffs John and Linda Adams (the "Adams") commenced this adversary proceeding on January 7, 2011, alleging the Meaghers' debt to them is

nondischargeable under 11 U.S.C. § 523(a)(4).[1]  The Adams filed their Second Amended Complaint (the "Complaint") on February 17, 2012.

## THE SECOND AMENDED COMPLAINT AND ANSWER

The Complaint states the Adams entered into a stock purchase agreement with the Meaghers in January 2006 for the purchase of a 25% interest in Woodstone for $400,000 in cash and a promissory note of $225,000 (the "Stock Purchase Agreement").  The Adams also loaned Woodstone $100,000, evidenced by a promissory note.  Further, the Adams personally co-guaranteed with the Meaghers a $300,000 line of credit for Woodstone (the "$300,000 Guaranty"), at Wells Fargo Bank ("Wells Fargo").

The Complaint further alleges after the Adams became shareholders and directors of Woodstone, the Meaghers placed themselves on the payroll of Woodstone without advising the Adams, and provided the Adams with minimal and erroneous information regarding Woodstone's finances.  In addition, the Meaghers loaned Woodstone $143,000 in March 2006 to cover expenses, without informing the Adams until late in 2006.  The Adams also assert the Meaghers refused to provide expense accounting for Woodstone for 2006 through 2008.

In May 2006, the Adams entered into an additional $100,000 loan guaranty (the "$100,000 Guaranty") with Wells Fargo.  Although the Complaint alleges the Adams executed the documents pertaining to the $100,000 Guaranty upon the representation the documents pertained to the $300,000 line of credit, the Complaint does not specify who made the representation.  After the $100,000 Guaranty, Wells Fargo disbursed $100,000 purportedly to satisfy a debt Woodstone owed to California Bank & Trust.  However, the Adams allege $60,696.37 of this amount actually went to California Bank & Trust and the Meaghers retained $39,303.63 for personal expenses.

In January 2007, the Meaghers told the Adams that Woodstone faced a cash crisis due to the theft of funds by an employee.  The Adams then loaned Woodstone an additional $100,000, evidenced by a promissory note due January 2009.  The Adams allege the employee accused of stealing funds later sued the Meaghers for defamation and received a settlement in the employee's favor.

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

In April 2007, Woodstone paid off the $300,000 Wells Fargo line of credit, but drew it down again in November 2007. The Adams had not agreed to this action and no board meetings were held to discuss it.

The Complaint also states the financial information for Woodstone provided to the Adams by the Meaghers is inconsistent with Woodstone's bank records.  In February 2008, the Meaghers told the Adams that Woodstone was in financial trouble and could not meet payroll.  The Adams assert Woodstone's financial troubles stemmed from the Meaghers' diversion of Woodstone's assets for their own benefit.

In April 2008, the Adams filed a suit against Woodstone and the Meaghers in the Routt County District Court (the "State Court Action") alleging breach of contract, violation of the Colorado Wage Act, breach of fiduciary duty, civil theft, and breach of shareholder agreement. The parties participated in mediation, and entered into a settlement agreement in September 2008 (the "Settlement Agreement").  Under the Settlement Agreement, the Meaghers executed a stipulation to and confession of judgment in the amount of $539,300 less any amounts paid, and agreed to make payments to the Adams.[2]

The Adams contend the Meaghers breached the Settlement Agreement and owe them $325,000 plus the $157,178.65 from the default judgment against Woodstone.  They claim this debt is nondischargeable because it arises out of a prepetition settlement of a fraud claim, and so may be pursued in the bankruptcy court. The Complaint contains the following three claims for relief: 1) a determination the Meaghers are alter egos of Woodstone; 2) breach of fiduciary duty under § 523(a)(4); and 3) embezzlement under § 523(a)(4).

The Meaghers admitted in their Answer to Second Amended Complaint they were in charge of Woodstone's finances during the times they were the sole shareholders, officers and directors of Woodstone.  They also admitted Linda Meagher had overall responsibility for Woodstone's accounting and was in charge of hiring accountants and bookkeepers.  However, they deny making financial representations about Woodstone.  They assert the Adams hired an independent accountant to review Woodstone's finances before making any

---

[2]  The Complaint also alleges the following: 1) in December 2010, approximately ten months after the Meaghers' bankruptcy filing, the Adams paid $325,000 to Wells Fargo Bank to discharge Woodstone's obligations on a letter of credit, a term loan, and the Adams' and the Meaghers' personal guaranties; 2) in February 2011, the Adams obtained a default judgment against Woodstone in the amount of $157,178.65.  The Complaint does not specify where this default judgment was obtained, although the Court presumes it was in the State Court Action.

investment.  The Meaghers admit to making loans to Woodstone, and admit Woodstone drew down its $300,000 line of credit at Wells Fargo Bank.  They agree the Settlement Agreement was reached with the Adams after mediation, and allege they performed under the Settlement Agreement, with the exception of removing the Adams as guarantors on the Wells Fargo line of credit.

By way of defense, the Meaghers state the Adams' complaint in the State Court Action contained false allegations and the Adams and their attorneys knowingly failed to disclose all claims of the Adams against Woodstone had been fully satisfied through the Settlement Agreement.  Thus, the Meaghers allege, the Adams obtained a default judgment against Woodstone on a note which had already been fully satisfied and released through the Settlement Agreement.  In addition, the Meaghers' Answer asserts the following affirmative defenses: 1) failure to state a claim; 2) lack of jurisdiction over the First Claim for Relief; 3) fraud in obtaining the state court judgment against Woodstone; 4) any losses suffered by the Adams were caused by their own acts; 5) offset; 6) failure to state a claim for embezzlement; 7) lack of causation; 8) failure to allege fraud and other misdeeds with the required particularity; 9) statute of limitations; 10) failure to state a claim for alter ego; 11) failure to state or allege when Woodstone became insolvent; 12) failure to state a claim for breach of fiduciary duty; 13) assumption of the risk; and 14) release.

## THE MEAGHERS' MOTION FOR SUMMARY JUDGMENT AND THE ADAMS' RESPONSE

The Meaghers contend the Court must determine three questions: 1) whether the Meaghers should be held personally liable to the Adams under an alter ego theory on a claim against Woodstone which was released by the Adams under the Settlement Agreement; 2) whether COLO. REV. STAT. § 7-108-401(5), as amended in 2006, overrules the *Bruning*[3] case by providing officers and directors do not have a fiduciary duty to creditors of a corporation arising only from the creditors' status as creditors; and 3) whether the two loans by the Adams to Woodstone of $50,000 each in January 2007,[4] which were used for business purposes, constitute funds "entrusted" for an embezzlement claim under § 523(a)(4).

In their Response, the Adams allege the Meaghers showed them documents in January 2006 indicating Woodstone was financially sound, but

---

[3]  *Berres v. Bruning (In re Bruning)*, 143 B.R. 253, 256 (D. Colo. 1992).

[4]  The Meaghers' Motion apparently refers to the second $100,000 Loan.

then used funds borrowed for Woodstone's use from the Adams and from Wells Fargo for their own benefit while Woodstone was insolvent.  Therefore, the Adams assert genuine issues of material fact exist as to whether the Meaghers committed defalcation while they were acting, or should have been acting, in a fiduciary capacity.  The Adams point out bank records indicate funds were loaned to Woodstone, but subsequent records do not show where several hundred thousand dollars of such funds were spent.

The Adams further allege Linda Adams did not quit working for Woodstone, but continued to perform services for Woodstone clients into 2008. Moreover, they contend she did not receive compensation for such services.

The Adams note the Settlement Agreement required the Meaghers to indemnify the Adams against claims by Wells Fargo, but the Meaghers made no payments against the principal balance of $300,000 while at the same time making payments to themselves and using Woodstone's funds for their own living expenses.  Thus, the Adams ended up paying Wells Fargo $325,000 against those claims.

The Response also asserts Woodstone did not hold meetings of its board of directors, and did not keep its bank accounts separate from those of the Meaghers.  It also states the Meaghers used funds from the Woodstone bank accounts for their personal expenses and did not document the expenses, improperly charging hundreds of thousands of dollars to Woodstone.

Moreover, the Adams allege a triable question of fact exists as to whether the Meaghers committed embezzlement.  They state they placed the the money they invested in Woodstone into the care and protection of the Meaghers, who ultimately used their access and control of these funds to pay for personal expenses and lifestyle.

The Adams argue the $100,000 in loans they made to Woodstone and the $325,000 they paid to Wells Fargo are thus nondischargeable pursuant to § 523(a)(4), because Woodstone is the alter ego of the Meaghers, and the Meaghers committed breach of fiduciary duty and embezzlement.

## DISCUSSION

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."[5]  The burden for establishing entitlement to summary judgment rests on the movant.[6]  Summary judgment is not appropriate where a dispute exists as to facts which could affect the outcome of the suit under relevant law.[7] A genuine dispute over a material fact exists when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[8]  When reviewing motions for summary judgment, the Court must view the record in the light most favorable to the non-moving party.[9]

## A.    Alter Ego and Release

With respect to the Meagher's contentions regarding the Settlement Agreement and the Adams' alter ego claim, the Court finds the Meaghers are, in essence, challenging the Adams' standing to sue them.  In other words, the Meaghers contend the Adams released Woodstone and the Meaghers under the Settlement Agreement, and have no "case or controversy" against the Meaghers in this Court.  Moreover, the Meaghers assert they cannot be considered alter egos of Woodstone, and, since the Adams' claim should be only against Woodstone, the Adams lack standing to bring this action.

In order to determine whether this jurisdictional argument is valid, the Court requires facts to determine whether standing exists.[10]  Here, the affidavits and documents presented with the Motion and the Response are not sufficient to make a determination as to whether the Settlement Agreement resulted in a release of claims against the Meaghers.[11]

---

[5]  FED. R. CIV. P. 56, (as incorporated by FED. R. BANKR. P. 7056);  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

[6]  *Celotex*, 477 U.S. at 323.

[7]  *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

[8]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)).

[9]  *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).

[10]  *Breeden v. Kirkpatrick & Lockhart, LLP (In re Bennett Funding Group, Inc.)*, 268 B.R. 704, 707 (S. D. N. Y. 2001).

[11]  In addition, the affidavits and documents presented do not provide the Court with sufficient facts and circumstances concerning the settlement between the parties. Consideration of the facts leading to a settlement is necessary to determine disputed

Specifically, Mr. Meagher's affidavit and Ms. Adams' affidavit indicate the Meaghers did not fulfill that portion of the Settlement Agreement requiring the Meaghers to refinance the Wells Fargo $300,000 personal line of credit to Woodstone and release the Adams from their personal guaranty of the same.[12] The Settlement Agreement states the parties' stipulations are reflected in the Memorandum of Understanding and incorporated by reference in the Settlement Agreement.[13]   The Memorandum of Understanding states "Woodstone and the Meaghers agree to confess judgment in the amount of $539,300 in the event of any breach of this Agreement."[14]

Neither the Motion nor the Response present information as to the extent of the Meaghers' performance under the Settlement Agreement.  In addition, there is no indication of whether the $539,300 judgment has entered due to the admitted failure to obtain the release of the Adams' personal guaranty of the Wells Fargo line of credit.  Therefore, the effect of the Settlement Agreement and whether it prevents the Adams from asserting some or all of their claim constitutes an genuine issue of material fact precluding summary judgment.

As to whether the Adams may assert an alter ego claim, the Court notes the Settlement Agreement and the Memorandum of Understanding both purport to apply not only to Woodstone, but to the Meaghers individually.  Under Colorado law:

> To determine whether piercing the corporate veil is appropriate, the court must first inquire into whether the corporate entity is the alter ego of the shareholder. Only then will actions ostensibly taken by the corporation be considered acts of the shareholder. An alter ego relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *Krystkowiak v. W.O. Brisben Co., Inc.*, 90 P.3d 859, 867 n. 7 (Colo. 2004) (internal

---

§ 523(a)(4) claims involving releases under settlement agreements.  *See Archer v. Warner*, 538 U.S. 314 (2003) (courts must look beyond the contractual nature of a settlement agreement, which includes release language, to determine debts under § 523(a)(4)).

[12]  Meagher Affidavit, ¶ 17.

[13]  Motion for Summary Judgment Exhibit M, Settlement Agreement, ¶ 1; *See also* Memorandum of Understanding (labeled "MOU") attached to Exhibit M.

[14]  Memorandum of Understanding, ¶ 6.

quotations omitted) (quoting *Gude v. City of Lakewood*, 636 P.2d 691, 697 (Colo. 1981)).

In establishing whether such unity of interest exists as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes. *Leonard*, 63 P.3d at 330 (citing *Newport Steel Corp. v. Thompson*, 757 F.Supp. 1152, 1156 (D. Colo.1990)). These factors reflect the underlying principle that the court should only pierce when the corporate form has been abused.

The court's second inquiry is whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." *Contractors Heating & Supply Co.*, 163 Colo. at 588, 432 P.2d at 239. Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced.

Third, the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity. *Water, Waste & Land, Inc.*, 955 P.2d at 1004. Achieving an equitable result is the paramount goal of traditional piercing of the corporate veil. A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met. *Contractors Heating & Supply Co.*, 163 Colo. at 588, 432 P.2d at 239.[15]

The parties dispute many of the factors set forth in the *Phillips* line of cases, and the evaluation of the equity of an alter ego finding must rest on evidence the Court cannot obtain from the information currently before it.

---

[15] *Connolly v. Englewood Post No. 32 VFW, et al v. Phillips (In re Phillips)*, 139 P.3d 639, 644 (Colo. 2006). *See also In re First Financial Services, LLC*, 2011 WL 2971841, at *7 (Bankr. D. Colo. July 21, 2011) (Slip Copy); *In re First Assured Warranty Corporation*, 383 B.R. 502, 527 (Bankr. D. Colo. 2008) (both relying on *Phillips*).

Therefore, genuine issues of material fact exist as to the alter ego question and summary judgment is inappropriate.

## B. Fiduciary Duty to Creditors of Corporation

Regarding the Meaghers' assertion no fiduciary relationship exists to support a § 523(a)(4) claim, the Court notes § 523 provides in relevant part, "(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[16]  The existence of a fiduciary relationship under this section is a matter of federal law, but state law is relevant to the inquiry.[17]

> Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt was based was entrusted to the debtor. Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4).  Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for purposes of dischargeability.[18]

However, as this Court has noted previously in this case:

> [B]oth Judge Kane and Judge Babcock of the United States District Court for the District of Colorado have held Colorado common law can create a technical trust relationship, such as when an officer or director of a corporation becomes a "technical trust" fiduciary to the corporation's creditors when the corporation becomes insolvent or

---

[16]  11 U.S.C. § 523(a)(4).

[17]  *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996).

[18]  *Id.* at 1371-1372 (citations and internal quotation marks omitted).  *See also Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934); *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir. 1976), *Bruning*, 143 B.R. at 255; *Beebe v. Schwenn (In re Schwenn)*, 126 B.R. 351, 352 (D. Colo. 1991).

when partners or joint venturers owe each other a "technical trust" fiduciary duty, although none is imposed by the partnership statute.[19]

While the Meaghers seek a finding the 2006 amendment to COLO. REV. STAT. § 7-108-401(5) eradicates this common law technical trust, post-2006 case law continues to support the *Bruning* rule.[20]  In *Paratransit*, the Colorado Court of Appeals held:

> [A] corporation's insolvency alters the dynamics among the corporation, its directors, and its creditors. Directors of an insolvent corporation are deemed to be  trustees for the corporation and for its creditors, *Rosebud Corp. v. Boggio*, 39 Colo. App. 84, 561 P.2d 367 (1977), and therefore, they owe a fiduciary duty to creditors not to divest corporate property for personal benefit, to prefer themselves over other creditors, or to defeat a corporate creditor's claim. *Crowley v. Green*, 148 Colo. 142, 365 P.2d 230 (1961); *Rosebud Corp. v. Boggio*, *supra*.[21]

Moreover, the Colorado Supreme Court has addressed the 2006 amendment as follows: "A 2006 amendment to the Colorado Revised Statutes, which does not apply to this case, states that directors and officers of corporations owe no fiduciary duties to the corporation's creditors. § 7–108–401(5), C.R.S. (2006). We express no opinion on whether this provision applies where a corporation is insolvent."[22]

Accordingly, the status of the Meaghers as fiduciaries for purposes of § 523(a)(4) cannot be determined without trial, because issues of fact exist as to Woodstone's insolvency and the Meagher's actions with respect to the Adams as creditors of Woodstone.  Therefore, summary judgment is not appropriate on this ground.

---

[19]  *Adams v. Meagher (In re Meagher)*, 2011 WL 2182050, at *3 (Bankr. D. Colo. June 3, 2011) (Slip Copy) (citing *Bruning* and *Schwenn*).

[20]  *Paratransit Risk Retention Grp. Ins. Co. v. Kamins*, 160 P.3d 307, 319–320 (Colo. App. 2007).

[21]  *Id.*

[22]  *Alexander v. Anstine*, 152 P.3d 497, 502 n.9 (Colo. 2007).  *See also Kirzhner v. Silverstein*, 2011 WL 4382560, at *6 (D. Colo. September 20, 2011) (citing *Paratransit*).

## C.    Embezzlement

Lliability under § 523(a)(4) may arise from a finding of embezzlement, as alleged in this case.  "Embezzlement" for § 523 purposes is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.[23] Embezzlement requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.[24]  Judge Brown and Judge Brooks of this Court have adopted a five-part standard for embezzlement under § 523(a)(4) which requires 1) entrustment (originally lawfully obtaining); 2) of the property; 3) of another; 4) misappropriating the property (using it for a purpose other than that for which it is entrusted); and 5) with fraudulent intent.[25]

The Meaghers argue the funds loaned to Woodstone by the Adams cannot constitute funds entrusted to them for purposes of embezzlement.  However, this Court agrees with the reasoning of Chief Judge Howard Tallman of this Court in a recent case involving two business partners, one of whom loaned money to the other for the business:

> The Court finds, therefore, that the Loan proceeds came lawfully into Long's hands as part of her agreement to enter into a business partnership with Houlne. Long's diversion of $6,957.01 of the Loan proceeds from the use agreed to by Houlne and herself to her personal use constitutes embezzlement under 11 U.S.C.§ 523(a)(4) so long as that diversion of funds was done with fraudulent intent. *See, e.g., Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988); *Driggs*, 787 F.2d at 507. The evidence also persuades the Court that Long's diversion of funds was done with the **requisite fraudulent intent to satisfy the intent requirement** under § 523(a)(4).
> . . .
> [E]ven though there is evidence of Long's repayment of significant funds, that partial repayment—while it does reduce the ultimate amount of damages—does not negate the fact that Long diverted the Loan proceeds from their intended use with the fraudulent intent that

---

[23]   *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988).

[24]   *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986), *overrruled in part on other grounds*; *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

[25]   *Bombardier Capital, Inc. v. Tinkler (In re Tinkler)*, 311 B.R. 869, 876 (Bankr. D. Colo. 2006) (citing *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 789 (Bankr. D. Colo. 2002)).

is required in order for the Court to find a debt nondischargeable for embezzlement under 11 U.S.C. § 523(a)(4).[26]

In the instant case, much of the parties' dispute centers around the funds loaned to Woodstone and the Adams' contention such funds were not used for business purposes but for personal expenses of the Meaghers.  Such funds would have come into the hands of Woodstone and the Meaghers lawfully, as part of the parties' business dealings.  Whether the funds were then misappropriated, to what extent, and the Meaghers' intent, are questions of fact for trial.  Thus summary judgment is inappropriate as to this argument as well.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED the Meaghers' Motion for Summary Judgment is hereby DENIED.

Dated November 23, 2012                    BY THE COURT:

                                           Michael E. Romero
                                           United States Bankruptcy Judge

---

[26] *Houlne v. Long (In re Long)*, 2012 WL 4060570, at *3–5 (Bankr. D. Colo. September 23, 2012) (emphasis added).